ANDREW L. PACKARD (Bar No. 168690)
MICHAEL P. LYNES (Bar No. 230462)
LAW OFFICES OF ANDREW L. PACKARD
319 Pleasant Street
Petaluma, California 94952
Telephone: (707) 763-7227
Facsimile: (707) 763-9227
E-mail:  Andrew@packardlawoffices.com

Daniel Cooper (Bar No. 153576)
Layne Friedrich (Bar No. 195431)
Martin McCarthy (Bar No. 194915)
LAWYERS FOR CLEAN WATER, INC.
1004 A O'Reilly Avenue
San Francisco, California  94129
Telephone: (415) 440-6520 ext. 204
Fax: (415) 440-4155
Email: cleanwater@sfo.com

Attorneys for Plaintiff,
SANTA MONICA BAYKEEPER

JS-6

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA MONICA BAYKEEPER, a non-profit corporation, <br><br> Plaintiff, <br> v. <br><br> CALIFORNIA METAL X, THE STRELITZ COMPANY, INC., and METAL BRIQUETTING COMPANY, <br><br> Defendants. | Case No. CV 07-03852 DDP (FMOx) <br><br> Hon. Dean D. Pregerson <br><br> **CONSENT DECREE** <br><br> **(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq*.)** |

1      **WHEREAS**, Santa Monica Baykeeper ("Baykeeper" or "Plaintiff") is a non-

2  profit corporation dedicated to the preservation, protection and defense of the

3  environment, the wildlife, and the natural resources of the Santa Monica Bay watershed

4  and area receiving waters in Los Angeles County;

5      **WHEREAS**, California Metal X, Inc. is an owner and/or operator of the scrap

6  metal recycling facility located at 366 East 58th Street, Los Angeles, California

7  (hereinafter the "CMX Facility");

8      **WHEREAS,** the Strelitz Company, Inc. ("Strelitz") is a corporation organized

9  under the laws of the State of California and an owner and/or operator of California

10  Metal X and Metal Briquetting Company;

11      **WHEREAS,** Metal Briquetting Company ("Metal Briquetting") operates at the

12  CMX Facility and is owned by Timothy Strelitz and/or the Strelitz Company, Inc;

13      **WHEREAS,** California Metal-X, Strelitz, and Metal Briquetting are collectively

14  referred to herein as "Defendants";

15      **WHEREAS**, Baykeeper contends that the Defendants' operations at the CMX

16  Facility result in discharges of pollutants to Compton Creek and the Los Angeles River,

17  which ultimately drain to Santa Monica Bay (collectively referred to as the "Receiving

18  Waters"), and Defendants' discharges are regulated by the Federal Water Pollution

19  Control Act, 33 U.S.C. § 1251 *et seq.* ("CWA" or "Act"), Sections 301(a) and 402, 33

20  U.S.C §§ 1311(a), 1342;

21      **WHEREAS**, on March 10, 2007, Baykeeper served Defendants, the United States

22  Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources

23  Control Board ("State Board") and the Regional Water Quality Control Board

24  ("Regional Board"), with a notice of intent to file suit ("60-Day Notice") under Sections

25  505(a) and (b) of the CWA, 33 U.S.C. § 1365(a) and (b).  The 60-Day Notice alleged

26  that the recipients had in the past and in fact continue to violate Sections 301(a) and 402

27  of the Act, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants into Receiving

28

Waters in violation of National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS0000001 [State Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Permit") and the Act;

**WHEREAS**, on June 13, 2007, Baykeeper filed a complaint against Defendants in the United States District Court, Central District of California (Civil Case No. CV 07-03852-FMC-(VBKx))[1] entitled *Santa Monica Baykeeper v. California Metal-X, The Sterlitz Company, Inc., and Metal Briquetting Company* ("Complaint");

**WHEREAS**, Defendants deny all allegations of the Complaint;

**WHEREAS**, Baykeeper and Defendants (collectively referred to herein as the "Settling Parties" or "Parties") have agreed that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, this Consent Decree shall be submitted to the United States Department of Justice and the United States Environmental Protection Agency for the statutory review period pursuant to 33 U.S.C. § 1365(c) and 40 C.F.R. § 135.5;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

**WHEREAS,** Defendants intend to continue industrial activities at the CMX Facility and will therefore need to undertake additional measures to control storm water pollution associated with continuing industrial activities;

---

[1] Thereafter, this case was transferred to the docket of the Hon. Valerie Baker Fairbank, and was recently transferred again to the docket of the Hon. Dean D. Pregerson for all further proceedings, case number CV-07-03852 DDP (FMOx).

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A);

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the Act, 33 U.S.C. §1365(c)(1), because the CMX Facility at which the alleged violations took place is located within this District;

3. The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the Act, 33 U.S.C. § 1365;

4. Baykeeper has standing to bring this action.

## I.   OBJECTIVES

5. It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in Section 101 *et seq.* of the CWA, 33 U.S.C. § 1251 *et seq.*, and to resolve those issues alleged by Baykeeper in its Complaint.  In light of these objectives and as set forth fully below, Defendants agree, *inter alia*, to comply with the provisions of this Consent Decree and to comply with the requirements of the Industrial Permit and all applicable provisions of the CWA at the CMX Facility.  Specifically, Receiving Water Limitation C(2) in the Industrial Permit requires that the CMX Facility "not cause or contribute to the exceedance of an applicable water quality limit." Effluent Limitation B(3) of the Industrial Permit requires that Best Management Practices ("BMPs") be developed and implemented to achieve Best Available Technology ("BAT") and the Best Conventional Pollutant Control Technology ("BCT").  Defendants are required to develop and implement BMPs necessary to comply with the Industrial Permit's requirement to achieve compliance with Water Quality Standards and BAT/BCT standards.

///

## II.    COMMITMENTS OF THE PARTIES

### A.    Industrial Storm Water Pollution Control Measures

6.    Defendants shall, within 30 days of the Effective Date of this Consent Decree, develop a BMP Plan containing the following measures listed herein, as necessary, and shall develop and implement additional measures if necessary, to reduce contamination in storm water discharged from the CMX Facility sufficient to achieve the numeric limits detailed in paragraph 10 below:

(a)    Materials Storage.  Placing sources of contamination in covered containers or under cover with such areas contained by berming or other containment sufficient to prevent the exposure of pollutants to storm water or rainwater and the runoff or discharge of pollutants;

(b)    Coating.  Coating structural sources of contamination (e.g. galvanized building roofs and siding);

(c)    Sweeping. Employing high efficiency sweeping in order to prevent the discharge of pollutants;

(d)    Storing Runoff.  Constructing and maintaining on-site retention facilities (such as retention ponds or swales, infiltration basins, baker tanks, sumps, or dry wells/ injection wells) designed to hold and store the runoff generated by a 25 year return period storm event without any off-site discharge;

(e)    Infiltrating Runoff.  Creating a pervious site such that infiltration happens passively through the site;

(f)    Infiltration Structure.  Collecting and routing storm water to a structure that is designed to be an infiltration structure (such as an infiltration basin or dry well/ injection well);

(g)    Treating Runoff.  Treating runoff discharging from the site.

(h)    Routing Discharge to the Publicly Owned Treatment Works.  Routing discharge to the publicly owned treatment works ("POTW")/ sanitary sewers, in

1    combination with on-site retention such that flows are discharged off-peak in the POTW

2    so as not to risk exacerbating wet weather Sanitary Sewer Overflow risks from the

3    POTW.

4              (i)    <u>Vehicle and Equipment Maintenance and Fueling.</u>

5                     i.    Conducting all vehicle and equipment maintenance and fueling

6    at the CMX Facility on asphalt or another impermeable surface;

7                     ii.    Conducting all vehicle and equipment maintenance and fueling

8    at the CMX Facility under cover;

9                     iii.    Berming of otherwise containing the surface of the area where

10   vehicle maintenance and fueling occurs (hereinafter "Maintenance and Fueling Area") in

11   order to prevent the exposure of pollutants to storm water or rainwater and the runoff or

12   discharge of pollutants;

13                    iv.    Cleaning the Maintenance and Fueling Area as necessary to

14   control track-off of pollutants;

15                    v.    Dispensing with all petroleum products within the Maintenance

16   and Fueling Area(s);

17                    vi.    Installing tire washing facilities at exit points from the CMX

18   Facility to prevent off-site tracking from vehicles;

19                    vii.    Annually power washing the entire paved part of the CMX

20   Facility, including areas not reachable by mechanical sweepers.

21         7.    Upon completion of the Plan, Defendants shall provide the Plan to

22   Baykeeper for review and comment, but shall submit the Plan no later than 30 days

23   from the Effective Date of this Consent Decree.  Defendants shall also provide a

24   separate document justifying the selections from paragraph 6 and why any options

25   omitted were not included in the Plan.  Baykeeper shall respond with comments within

26   30 days of receiving the Plan and statement justifying the Plan.  Defendants shall

27   incorporate Plaintiff's comments into the Plan, or shall justify in writing why any

28

1   comment is not being incorporated, within 30 days of receiving comments.  Defendants

2   shall then implement the Plan within 90 days of the Effective Date of this Consent

3   Decree.

4         **B.**    **NUMERIC LIMITS AND SAMPLING**

5         8.    <u>Sampling Program.</u>  Within 30 days of the Effective Date, Defendants shall

6   develop a plan for the collection of storm water samples during storm events that

7   incorporate the requirements of this Consent Decree and the Industrial Permit,

8   including, but not limited to, the requirement to sample non-storm water discharges for

9   the CMX Facility ("Sampling Plan"), and which specifically shall require sampling at

10  all discharge points from the CMX Facility as described below, and all other new or

11  additional discharge points created in the future.  Defendants agree to submit the

12  Sampling Plan to Baykeeper for review and comment as soon as it is completed but in

13  any event no later than 30 days from the Effective Date of this Consent Decree.

14  Baykeeper shall provide comments, if any, to the Defendants within 30 days of receipt

15  of the Sampling Plan.  Any disputes as to the adequacy of the Sampling Plan shall be

16  resolved pursuant to the dispute resolution provisions of this Consent Decree, set out at

17  paragraphs 27 through 30 below.

18        9.    <u>Sample Analysis and Sample Frequency.</u>  Beginning with the 2007/ 2008

19  wet season (defined as October 1- May 31) and continuing each wet season for the life

20  of this Consent Decree, Defendants shall collect storm water samples from each

21  discharge location from each storm event occurring during business hours, up to five

22  storm events per wet season5, at the CMX Facility.  Defendants shall analyze the

23  samples for the constituents identified in Table 1.  Defendants may discontinue

24  analyzing storm water samples for a constituent specified in Table 1 after four

25  consecutive sampling results for the constituent are reported as below both the Numeric

26  Limits of Tables 1 and 2.  Samples shall be analyzed with detection limits that the

27  analytical laboratory can use to accurately identify concentrations at or below the CTR

28

1   Levels.  A California State certified laboratory shall perform all sample chemical

2   analyses.  Defendants shall select laboratories and analytical limits such that, at a

3   minimum, the method detection limits ("MDLs") shall be below both the Numeric

4   Limits set forth in Table 1 and CTR Levels.  In addition, Defendants shall perform

5   sampling as required by the Industrial Permit for the CMX Facility.

6      10.   <u>Numeric Limits</u>.  Contaminants in discharges shall not exceed the limits in

7   Table 1.

8   **Table 1.  Numeric Limits for CMX Facility Discharges[2]**

| Contaminant[a] | Limit |
|---|---|
| **BAT/ BCT Limits:** | |
| Total suspended solids | 25 mg/L[b, c] |
| Copper | 0.015 mg/L[b, d] |
| Lead | 0.012 mg/L[b, e] |
| Zinc | 0.075 mg/L[b, f] |
| Oil and grease | 10 mg/L[g] |
| **Benchmark limits:** | |
| Aluminum | 0.750 mg/L |
| Arsenic | 0.16854 g/L |
| Cadmium | 0.0159 mg/L |
| Iron | 1 mg/L |
| Mercury | 0.0024 mg/L |
| Nickel | 1.417 mg/L |
| Silver | 0.0318 mg/L |
| Chemical oxygen demand | 120 mg/L |
| pH | 6.0-9.0 |
| Analyze for hardness | |

---

[2] The Best Available Technology (BAT) limits were derived from the International BMP Database assembled by EPA and others for contaminants measured at a variety of BMPs, accepted into the database, and subjected to statistical analysis.  The proposed BAT limit is generally based on the maximum median pollutant discharge concentration among all reported BMP types, except hydrodynamic devices (which perform more poorly than land-based BMPs).  In some cases the Caltrans Retrofit Pilot Study results for the same BMPs were also consulted to guide the selection.  The BAT limit for oil and grease is equivalent to the widely accepted capability of a coalescing plate or equivalent oil/water separator.  Other contaminants common in scrap yard discharges are not represented at all, or are not sufficiently represented, in the database to set BAT limits.  In these cases the limits are the benchmarks in the EPA multi-sector industrial permit applicable at the execution of this Agreement (tabulated values are from the 2000 permit applicable in July 2007).

[a] All metals are as total recoverable.
[b] MF—media filters, WB—wet basins, WL—constructed wetlands, BF—biofilters, EDB— extended-detention basins, CT—Caltrans BMP Retrofit Pilot Study
[b] Highest median in EPA database for MF, WB, WL, BF = 24; CT = 0.028 mg/L
[d] Highest median in EPA database for MF, WB, WL, BF = 10; for EDB, CT = 0.016 mg/L
[e] Highest median in EPA database for MF, WB, WL, BF = 0.05; for EDB = 0.014; CT = 0.012 mg/L
[f] Highest median in EPA database for MF, WB, WL, BF, EDB = 0.073 mg/L
[g] Coalescing plate or equivalent oil/water separator capability

11.   Exceedances of Numeric Limits.  If any contaminant exceeds its Numeric Limit in paragraph 10 above, Defendants shall demonstrate that the potential total mass emission of the contaminant has been reduced through a combination of decrease in its concentration and reduction of the volume of the runoff discharged.  Defendants agree to submit proof of the contaminant reduction to Baykeeper for review and comment as soon as it is completed, but in any event no later than 30 days after receipt of sampling data demonstrating the exceedance.  Baykeeper shall provide comments, if any, concerning the proof of the contaminant reduction to the Defendants within 30 days of receipt.  Defendants shall incorporate Baykeeper's comments in order to reduce the mass emission of the contaminant and shall implement the reduction within 14 days of receiving Baykeeper's comments.  If any of Baykeeper's comments is not utilized, Defendants shall justify in writing why any comment is not being incorporated within 14 days of receiving comments.  Any disputes as to the adequacy of the reduction shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out at paragraphs 28 through 31 below.

12.   Numeric Limit Action Plan.  If any contaminant exceeds its Numeric Limit by more than 300 percent, as set forth immediately above, Defendants shall produce an Action Plan within 30 days of Defendants' receipt of storm water sampling data demonstrating the exceedance.  The Action Plan shall include BMPs designed to achieve compliance with the Numeric Limits set forth in Table 1 and include deadlines for implementation of the proposed BMPs.  Defendants agree to submit the Action Plan to

Baykeeper for review and comment as soon as it is completed but in any event no later than 30 days after receipt of sampling data demonstrating an exceedance.  Baykeeper shall provide comments, if any, to the Defendants within 30 days of receipt of the Action Plan.  Defendants shall incorporate Baykeeper's comments into the Action Plan and implement the Action Plan within 30 days of receiving Baykeeper's comments.  If any of Baykeeper's comments is not incorporated into the Action Plan, Defendants shall justify in writing why any comment is not being incorporated within 30 days of receiving comments.  Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out at paragraphs 28 through 31 below.  Baykeeper's consent to Defendants' requested extension shall not be unreasonably withheld.  Defendants shall notify Baykeeper in writing when the Action Plan has been implemented.

13.   <u>BAT/BCT and Benchmark Levels:  Determination of Breach of Consent Decree.</u>  Any discharge(s) of stormwater occurring after the Effective Date of this Consent Decree (and after implementation of the Action Plan above, if applicable) with concentrations above those set out in paragraph 10 above shall be considered a breach of this Consent Decree, unless (1) Defendants demonstrate that they have met the following schedule for covering the CMX Facility and/or eliminating areas of industrial activity exposed to rainfall by achieving:

| | |
|---|---|
| <u>1 July 2008</u> | <u>80 % coverage</u> |
| <u>1 September 2008</u> | <u>83 % coverage</u> |
| <u>1 July 2009</u> | <u>85 % coverage</u> |
| <u>1 September 2009</u> | <u>91% coverage or move operations to site providing 100% cover;</u> |

or (2) Defendants demonstrate that the potential total mass emission of a contaminant exceedance has been reduced through a combination of a decrease in its concentration and a reduction of the volume of runoff discharged.  Any disputes as to the adequacy of

the reduction shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out at paragraphs 28 through 31 below.  The demonstration that the potential total mass emission of a contaminant has been reduced shall be made as follows:

a.      Determine the geometric mean of all concentrations of the contaminant measured before and after the Effective Date of this Consent Decree.  If there is no data for an exceeding contaminant from the period before the Effective Date, the concentration(s) measures after the Effective Date shall be assumed to apply before the Effective Date as well in performing this analysis;

b.      Determine the site surface area discharging runoff containing the contaminant before and after this Effective Date;

c.      Multiply the geometric mean of concentrations and site surface area discharging before and after this Effective Date to obtain indicators of potential mass emission before and after this Effective Date;

d.      Show that the potential mass emission of the contaminant has decreased by the following amounts:

| If the concentration exceeds the Numeric Limit by: | Then the potential total mass emission shall be reduced by: |
|---|---|
| 1-100% (i.e., up to 2 times the limit) | 50% |
| 101-200% (i.e., up to 3 times the limit) | 75% |
| 201-300% (i.e., up to 4 times the limit) | 90% |

14. <u>Contaminant Reductions and CTR Limits</u>. Defendants shall develop and implement a plan designed to reduce contaminants in discharges below the CTR CCC[3] limits (referred to as "CTR Plan") for the following contaminants:

**Table 2—California Toxics Rule Standards[3, 4]**

| Contaminant | CTR Criterion Maximum |
|---|---|
| Arsenic | 340 |
| Cadmium | 0.0043 mg/L |
| Chromium (III) | 0.550 mg/L |
| Chromium (VI) | 0.016 mg/L |
| Copper | 0.013 mg/L |
| Lead | 0.065 mg/L |
| Mercury | Reserved |
| Nickel | 0.470 mg/L |
| Silver | 0.0034 mg/L |
| Zinc | 0.120 mg/L |
| PCBs | Goal of 0.000014 mg/L |

15. Defendants shall submit the CTR Plan to Baykeeper for review and comment as soon as it is completed but in any event no later than 30 days after the Effective Date. Baykeeper shall provide comments, if any, to the Defendants within 30 days of receipt of the CTR Plan. Defendants shall incorporate Baykeeper's comments into the CTR Plan and implement the CTR Plan within 30 days of receiving Baykeeper's comments. If any of Baykeeper's comments is not incorporated into the CTR Plan, Defendants shall justify in writing why any comment is not being incorporated within 30

---

[3] The CTR CCC limits are the California Toxics Rule (CTR) Criterion Maximum Concentrations (CMC) from the Federal Register, Vol. 65, No. 97, May 18, 2000. Values differ for freshwater and saltwater discharges. Defendants shall use the value applying in the first Water of the State receiving its discharge. For metals the limits apply to the dissolved quantity, and hence Defendant shall measure dissolved as well as total recoverable metals. In general, freshwater limits for metals depend on water hardness. Defendants shall measure the hardness in each discharge sample and use the resulting value as specified by the Federal Register to determine the specific CCC limits.
[4] Note: CTR Limits are expressed as a function of total hardness in the water body based on the equations provided in Federal Register, Vol. 65, No. 97, May 18, 2000, and being hardness dependant

1   days of receiving comments.  Any disputes as to the adequacy of the CTR Plan shall be

2   resolved pursuant to the dispute resolution provisions of this Consent Decree, set out at

3   paragraphs 27 through 30 below.

4          16.    <u>CTR Level Exceedances and CTR Action Plan.</u>  If any sampling

5   demonstrates discharges of stormwater containing concentration of pollutants exceeding

6   a CTR limit, as expressed immediately above, within 45 days of receipt the data

7   evidencing the exceedance, Defendants shall provide Baykeeper with an Action Plan to

8   implement additional BMPs designed to achieve the CTR Levels.  The Action Plan shall

9   include deadlines for implementation of the proposed BMPs.  Defendants shall continue

10  to submit an Action Plan by July 1 of each year for the life of this Consent Decree for the

11  CMX Facility until achieving the CTR Levels by demonstrating that the average of five

12  or more storm water samples collected are below the CTR Levels of Table 1.  Baykeeper

13  shall have forty-five (45) days upon receipt of Defendant's Action Plan to provide

14  Defendants with comments.   Defendants shall have forty-five (45) days from the date of

15  Baykeeper's comments on Defendants' Action Plan to implement the additional

16  structural and non-structural BMPs.  If any structural BMPs require agency approval then

17  Defendants' requested extension shall not be unreasonably withheld.  Defendants shall

18  notify Baykeeper in writing when the Action Plan has been implemented. Disputes

19  relating to the adequacy of the Action Plan shall be resolved via the dispute resolution

20  provisions set out in paragraphs 28 through 31 below.

21         **C.    <u>STORM WATER POLLUTION PREVENTION PLAN</u>**

22         17.    <u>SWPPP Revisions.</u>  Within 90 days of the Effective Date of this Consent

23  Decree, Defendants agree to revise the SWPPP currently in effect at the CMX Facility

24  to incorporate all storm water pollution prevention measures and other requirements set

25  ───────────────────────────────

26  will vary with the analyzed total hardness of the water body.  The CTR Criterion Maximum levels
    expressed herein assume a total hardness of 100 mg/L.

27

28

forth in this Consent Decree and/or the Industrial Permit.  Specifically, the SWPPP shall include a description of all industrial activities and corresponding potential pollution sources and, for each potential pollutant source, a description of the potential pollutants from the sources.  The SWPPP shall also identify BMPs (and their implementation dates) designed to achieve compliance with Numeric Limits set forth in Table 1, the mass emissions potential reduction measures, and CTR Levels.  Defendants shall revise the SWPPP as necessary to incorporate additional BMPs developed pursuant to this Consent Decree.

18.  <u>Baykeeper's Review of Revised SWPPP.</u>  Defendants shall submit one copy of the revised SWPPP to Baykeeper within seven days of completion of the revisions.

a.  Within thirty (30) days of Baykeeper's receipt of the revised SWPPP, Baykeeper shall provide Defendants with comments and suggestions, if any, concerning the revisions to the SWPPP.

b.  Within fourteen (14) days of Defendants' receipt of Baykeeper's comments on the revised SWPPP, Defendants shall incorporate Baykeeper's comments and re-issue the SWPPP.

c.  If Baykeeper is dissatisfied with the SWPPP after their re-issuance pursuant to paragraph 21(b) above, Baykeeper may, within sixty (60) days of Baykeeper's receipt of the SWPPP, elect to invoke the dispute resolution procedures outlined in paragraphs 28-31 below.

### D.  <u>MONITORING AND REPORTING</u>

19.  <u>Site Inspections.</u>  For the first two years of the term of this Consent Decree, Baykeeper's Water Quality Engineer, accompanied by Baykeeper's attorney or other representative, may conduct up to three yearly Site Inspections at the CMX Facility and may conduct up to two Site Inspections each year thereafter.  The Site Inspections shall occur during normal business hours and Baykeeper shall provide Defendants' with forty-eight (48) hours notice prior to each inspection.  During the Site Inspections, Baykeeper

and/or its representatives shall be allowed access to the CMX Facility's SWPPP and monitoring records and to all monitoring reports and data for the CMX Facility. During the Site Inspections, Baykeeper and/or its representatives may collect samples of storm water discharges at the CMX Facility. A certified California laboratory shall analyze storm water samples collected by Baykeeper. Baykeeper shall make every reasonable effort to ensure that its inspections are scheduled in such a manner as to allow Defendants' compliance officer to be present at all inspections.

20. <u>Compliance Monitoring and Oversight.</u> Defendants agree to help defray Baykeeper's reasonable costs incurred in conducting Site Inspections and compliance monitoring by reimbursing Baykeeper Two Thousand Five-Hundred Dollars ($2,500) on or before 26 March 2008. Defendants agree to make compliance monitoring and oversight funds payable to "Lawyers for Clean Water Attorney-Client Trust Account" and delivered by certified mail or overnight delivery to Lawyers for Clean Water, Inc., 1004 A O'Reilly Avenue, San Francisco, California 94129. Baykeeper shall provide copies of any invoicing for Site Inspections and compliance oversight within thirty (30) days of receiving a written request by Defendants. Any compliance monitoring money remaining when this Consent Decree terminates shall be refunded to Defendants.

21. <u>Reporting.</u> During the life of this Consent Decree, on a monthly basis, Defendants shall provide Baykeeper with a copy of all compliance and monitoring data, including inspection reports, related to the CMX Facility. During the life of this Consent Decree, Defendants shall provide Baykeeper with all laboratory analyses related to the CMX Facility within seven days of Defendants' receipt of such information.

22. <u>Document Provision.</u> During the life of this Consent Decree, Defendants shall copy Baykeeper on all documents related to water quality at the CMX Facility that are submitted to the Regional Board, the State Board, and/or any State or local agency or municipality. Such reports and documents shall be provided to Baykeeper concurrently as they are sent to the agencies and/or municipalities.

**E.   ENVIRONMENTAL PROJECTS AND FEES**

23.   <u>Environmental Mitigation Project.</u>  Defendants agree to pay Twenty Thousand Dollars ($20,000) to Santa Monica Bay Restoration Commission for use in a supplemental environmental project to eliminate or mitigate the impacts of storm water pollution to California watersheds receiving discharges from the CMX Facility. Defendants shall make the mitigation payment on or before 14 June 2008 and mail the payment via certified mail or overnight delivery to the Santa Monica Bay Restoration Commission, 320 West 4th Street, Suite 200, Los Angeles, CA 90013.  Defendants shall provide Baykeeper with a copy of such payment.

24.   <u>Baykeeper's Fees and Costs.</u>  Defendants agree to reimburse Baykeeper for Baykeeper's investigation fees and costs, expert fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and preparing the lawsuit, and negotiating a resolution of this matter, totaling Forty-Eight Thousand Dollars ($48.000.00).  Such payment shall be made in four separate installments of Twelve Thousand Dollars ($12,000.00), commencing with the first payment of $12,000.00 on 15 February 2008; the second payment of $12,000.00 on 26 March 2008; the third payment of $12,000.00 on 5 May 2008; and the last payment of $12,000.00 on 14 June 2008.  All such payments shall be made payable to "Lawyers for Clean Water Attorney-Client Trust Account" and delivered by certified mail or overnight delivery to:  Lawyers for Clean Water, Inc., 1004 A O'Reilly Avenue, San Francisco, California 94129.

**F.   STIPULATED PAYMENT**

25.   Defendants shall make a remediation payment of One Thousand Dollars ($1,000) for each missed deadline included in or contemplated by this Consent Decree, unless the missed deadline results from a Force Majeure Event.  Payments for missed deadline shall be made to Santa Monica Bay Restoration Commission for the restoration and/or improvement of the watershed in the area affected by the missed deadline.  Defendants agree to make the stipulated payment within thirty (30) days of a

missed deadline and mail via certified mail or overnight delivery to Santa Monica Bay Restoration Commission, 320 West 4th Street, Suite 200, Los Angeles, CA 90013. Defendants shall provide Baykeeper with a copy of each such payment.

### G.   **COMMITMENTS OF PLAINTIFF**

26.    Filing of Decree.  Within ten days of the execution of this Consent Decree by the parties, Baykeeper shall file this Consent Decree and [proposed] order with the United States District Court for the Central District of California ("District Court").

27.    Review by Federal Agencies.  Plaintiff shall submit this Consent Decree to EPA and the U.S. Department of Justice ("DOJ") within three days of the execution of this Consent Decree for review consistent with 40 C.F.R. § 135.5.  In the event that EPA or DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

28.    If following receipt of an approval/no comment letter from EPA/DOJ, or the expiration of the 45-day comment period set out in 40 CFR § 135.5, the Court fails to enter this Consent Decree within thirty (30) days, this Consent Decree will be null and void.  Baykeeper will then refund any payments made by Defendants to Baykeeper under the terms of this Consent Decree within thirty (30) days.

### H.   **DISPUTE RESOLUTION**

29.    This Court shall retain jurisdiction over this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

30.    Meet and Confer.  A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Parties in writing of the matter(s) in dispute and of the party's intention to resolve the dispute under this Section.

The Parties shall then meet and confer in an attempt to resolve the dispute informally over a period of fourteen (14) calendar days from the date of the notice.

31.     If the Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the party invoking the dispute resolution provision shall provide notice to the other party that it intends to invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Parties shall jointly apply to the Court for an expedited hearing schedule on the motion.

32.     If Baykeeper initiates a motion or proceeding before the Court relating to enforcement of the terms and conditions of this Consent Decree, Baykeeper shall be entitled to recover fees incurred to enforce the terms of this Consent Decree consistent with the provisions of Sections 505 and 309 of the CWA, 33 U.S.C. §1365 and § 1319.

## III.   RETENTION OF JURISDICTION AND TERMINATION

33.     The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree filed within sixty (60) days after completion of the obligations set forth in the Consent Decree.  This Consent Decree shall terminate five years from the Effective date of this Consent Decree or, in the alternative, shall terminate either: (1) on 1 November 2009 if Defendants demonstrate that they have met the schedule for covering the CMX Facility and/or eliminating areas of industrial activity exposed to rainfall (set forth in paragraph 13 above)  by achieving 91% coverage at the CMX Facility on or before 1 September 2009, or by achieving 100% coverage by moving operations to a covered facility across the street on or before 1 September 2009; or (2) upon a demonstration of compliance with the numeric effluent limitations set forth in Tables 1 and 2  for four consecutive sampling events.

## IV.   <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>

34.   In consideration of the above, upon the Effective Date of this Consent Decree, the Parties hereby fully release, except for claims for the Defendants' failure to comply with this Consent Decree and as expressly provided below, each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all alleged CWA violations claimed in the Complaint, up to and including the Effective Date of this Consent Decree.

35.   Nothing in this Consent Decree limits or otherwise affects Plaintiff's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to Defendants.

## V.   <u>MISCELLANEOUS PROVISIONS</u>

36.   Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.  Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

37.   <u>Construction</u>.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Industrial Permit, the Clean Water Act, or specifically herein.

38.   <u>Choice of Law</u>.  The laws of the United States shall govern this Consent Decree.

39.   <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

40.     <u>Correspondence</u>.  All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by regular, certified, or overnight mail as follows:

<u>If to Plaintiff</u>:

Andrew L. Packard, Esq.
The Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, CA 94952


With copies to:

Santa Monica Baykeeper
P.O. Box 10096
Marina Del Rey, CA 90295


<u>If to Defendant</u>:

William Funderburk, Esq.
Stanzler Funderburk & Castellon LLP
811 Wilshire Blvd. Suite 1025
Los Angeles, CA 90017

With copies to:

California Metal-X
366 E. 58th Street
Los Angeles, CA 90011

Notifications of communications shall be deemed submitted three days after the date that they are postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.  Any change of address or addresses shall be communicated in the manner described above for giving notices.  In addition, the Parties may agree to transmit documents electronically or by facsimile.

41.  <u>Effect of Consent Decree</u>.  Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that the Defendants' compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

42.  <u>Counterparts</u>.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

43.  <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

44.  <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter.

45.  <u>Integration Clause</u>.  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

46.  <u>Authority</u>.  The undersigned representatives for Plaintiff and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

47.  The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns.  The Parties certify that their undersigned

representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

48.     The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.  By entering into this Consent Decree, the Defendants do not admit liability for any purpose as to any allegation or matter arising out of this Action.

49.     The term "Effective Date," as used in this Consent Decree, shall mean the date of execution by all parties and their counsel of this Consent Decree.


The undersigned representatives for Baykeeper and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree and that this Consent Decree binds that party.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth above.


LAWYERS FOR CLEAN WATER, INC.


Dated:       _____ February 2008       _____
                                        Daniel Cooper
                                        Lawyers for Clean Water, Inc.
                                        Attorneys for Plaintiff
                                        Santa Monica Baykeeper


SANTA MONICA BAYKEEPER


Dated:       _____ February 2008       by: _____
                                        Tom Ford
                                        Santa Monica Baykeeper

1
2
3                                   STANZLER FUNDERBURK CASTELLON LLP
4
5
6    Dated:        _____ February 2008      _____
7                                           William W. Funderburk
                                            Attorney for Defendants
8                                           California Metal-X, Sterlitz Company, Metal
                                            Briquetting Company
9
10
11
12                                          CALIFORNIA METAL-X
                                            THE STRELITZ COMPANY
13                                          METAL BRIQUETTING COMPANY
14
15
16   Dated:        _____ February  2008     _____
17                                           Tim Strelitz
                                             California Metal-X
18                                          The Strelitz Company
                                            Metal Briquetting Company
19
20
     **IT IS SO ORDERED:**
21
22    Date: April 22, 2008
23
24
25                                          _____
26                                          Honorable Dean D. Pregerson
                                            UNITED STATES DISTRICT COURT JUDGE
27
28